2023 IL App (1st) 231967-U

SECOND DIVISION
December 29, 2023

No. 1-23-1967B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 00 CR 9355 |
| | ) | |
| IVY KELLY, | ) | Honorable |
| | ) | Michele M. Pitman, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justice Cobbs concurs in the judgment.
Justice Ellis specially concurs in the judgment.

ORDER

¶ 1     *Held*: We affirm the trial court's decision to grant the State's petition for pretrial detention. Defendant has not demonstrated that the trial court abused its discretion in evaluating the evidence under the relevant statutory framework when it granted the State's petition for pretrial detention.

¶ 2     Defendant Ivy Kelly filed this appeal under the Pretrial Fairness Act. The Pretrial Fairness Act is a newly passed law that makes up a portion of the two public acts that amended

Article 110 of the Code of Criminal Procedure (725 ILCS 5/110-1 *et seq.*). See P.A. 101-652 and P.A. 102-1104. Illinois Supreme Court Rule 604 allows a defendant to immediately appeal an order denying pretrial release to a defendant. Ill. S. Ct. R. 604(h)(1)(iii) (eff. Sept. 18, 2023). In this case, defendant filed a motion for pretrial release and the State filed a petition for defendant to be detained until trial. The circuit court denied defendant's motion and ordered him to be held without bail pending trial or, in other words, granted the State's petition for pretrial detention. Defendant now appeals the circuit court's order that he be detained until trial without any conditions for pretrial release. We affirm.

¶ 3                                    BACKGROUND

¶ 4     Defendant was convicted of first-degree murder in a bench trial held in 2003. He was sentenced to 30 years in prison. Defendant filed a direct appeal, and we affirmed his conviction. *People v. Kelly*, No. 1–03–2990 (2005) (unpublished order under Supreme Court Rule 23). Defendant later filed a petition for relief under the Post–Conviction Hearing Act (725 ILCS 5/122–1 *et seq.* (West 2022)). The circuit court dismissed defendant's postconviction petition, but on appeal, we reversed the circuit court's dismissal of the petition and remanded the matter for further proceedings. *People v. Kelly*, 2014 IL App (1st) 121069-U, ¶ 66 (unpublished order under Supreme Court Rule 23). On remand, when the postconviction proceedings continued under a new judge who had replaced the judge who presided over the trial, the circuit court granted defendant's petition for postconviction relief. The circuit court vacated defendant's conviction and ordered a new trial.

¶ 5     The principal reason defendant was granted a new trial was because one of the State's key witnesses at defendant's trial was working as an FBI informant, and defense counsel did not cross-examine the witness about his motives for testifying. Defense counsel knew or had reason

2

to know the witness was working as an informant, but failed to cross-examine the witness on the issue which certainly could have served to discredit the witness or cast some doubt on the testimony. When ruling on the postconviction petition, the circuit court indicated that its review of the record indicated that the case was "not a very strong case for the [S]tate" because there was no physical evidence and the witnesses against defendant were not consistent in their testimony.

¶ 6    The facts of the underlying crime and conviction are set forth more fully in our orders disposing of previous appeals in this case. See *Kelly*, No. 1–03–2990 (2005) (unpublished order under Supreme Court Rule 23); *Kelly*, 2014 IL App (1st) 121069-U, ¶ 66 (unpublished order under Supreme Court Rule 23). We recite only some of the facts here, particularly those facts that are pertinent to the issue of defendant's pretrial release.

¶ 7    Defendant's conviction arose from the shooting death of Joseph Ward on December 10, 1999. Defendant and the victim were friends who sold drugs together, along with defendant's co-offender in this case, Demetrius Hampton, and other individuals including Christopher Lacy. Lacy and another individual, Paula Scott, told investigators that they were eyewitnesses to the murder. Both Lacy and Scott gave detailed written statements to investigators that constituted fairly damning testimony against defendant if it was to be believed. In her written statement, Scott indicated that she was standing outside of her home talking to the victim when the shooting occurred. Scott saw Lacy standing across the street talking to two girls. Scott witnessed defendant and Hampton, both of whom she knew, approaching the victim. Scott then saw defendant and Hampton "both pull[] out guns and start[] shooting at [the victim]," who was unarmed.  In his written statement, Lacy indicated that he was standing near a parked car talking to two girls while the victim was across the street with Scott. Lacy saw defendant and Hampton

approach and talk to the victim and Scott. A couple minutes later, Lacy saw Hampton point a gun at the victim. The victim turned to run, and defendant and Hampton started firing shots at the victim.

¶ 8    Defendant's co-defendant, Demetrius Hampton, gave a written confession to investigators. Hampton's account of the murder tracks with the accounts given by Lacy and Scott. Hampton told investigators that defendant lost some of the victim's drugs. Hampton stated that, on the night of the murder, defendant gave him a gun and defendant himself also had a gun which was in his waistband. Defendant and Hampton drove to the victim's location and defendant and the victim were having a conversation. Defendant then pulled the gun out of his waistband and the victim put his hands up and then started to try to run away. Hampton then saw defendant shoot the victim with his gun. After defendant had fired two shots, Hampton then also shot at the victim.

¶ 9    When Lacy testified before a grand jury and when he testified at trial, he stated that, a week after the murder, defendant held two guns to his head and said "[i]f you ever tell anybody, I'm going to kill you. That's on my mama. I'll kill you." Lacy also testified that defendant's girlfriend approached him and asked him to sign an affidavit that defendant did not shoot the victim. Scott told investigators that, after the victim's death, defendant came to her house and told her not to talk to the police. Defendant admitted at trial that he pointed a gun at Lacy, but defendant said he did so because he wanted Lacy to tell him who the real killers were.

¶ 10    Scott repudiated most of her written statement when she testified at trial. Lacy repudiated some key parts of his written statement when he testified at trial. Both eyewitnesses said at trial that they were not sure who the shooters were. Defendant was nonetheless found guilty of first-degree murder.

¶ 11    The circuit court concluded that defendant did not receive constitutionally effective counsel due to counsel's failure to use the "certainly relevant" impeachment evidence that a key witness against defendant was working for the FBI at the time of giving the testimony in this case.

¶ 12    While awaiting retrial, the State offered defendant a plea deal to release him for time considered served in exchange for a guilty plea. Defendant rejected the offer, maintaining his innocence and he filed a motion for pretrial release. The State filed a petition for pretrial detention and then filed an amended petition for pretrial detention. Defendant argued that the willingness of the State to release him for time considered served is evidence the State does not consider him a threat and he should be released.  On those competing claims for relief, the circuit court held a pretrial detention hearing. At the conclusion of the pretrial detention hearing, the circuit court ordered defendant held without bail pending trial.

¶ 13                                    ANALYSIS

¶ 14    The Code of Criminal Procedure, as recently amended, provides that "all persons charged with an offense shall be eligible for pretrial release before conviction." 725 ILCS 5/110-2(a) (eff. Jan. 1, 2023). Under the statute, it is now "presumed that a defendant is entitled to release on personal recognizance" with the stipulation that the defendant must attend all required court proceedings, not commit any criminal offenses while on pretrial release, and comply with all other terms of the pretrial release. *Id.* A defendant nonetheless may be denied pretrial release if the defendant "presents a real and present threat to the safety of any person or persons or the community." 725 ILCS 5/110-2(c) (eff. Jan. 1, 2023) accord 725 ILCS 5/110-6.1(a)(1.5) (eff. Jan. 1, 2023)  (pretrial release may be denied if such release "poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of

the case."). Moreover, a defendant may be denied pretrial release if no condition of the release can reasonably ensure: (1) the defendant's appearance in court; (2) the protection of another person or the community; (3) that the defendant will not attempt or obstruct the criminal justice process; and (4) that the defendant will comply with all conditions of release. *Id.*; see also 725 ILCS 5/110-6.1 (eff. Jan. 1, 2023) (delineating the circumstances under which a defendant may be properly denied pretrial release).

¶ 15    The burden is on the State at a pretrial detention hearing to demonstrate by clear and convincing evidence that the defendant should be denied pretrial release. 725 ILCS 5/110-6.1(e) (eff. Jan. 1, 2023). We review the circuit court's decision to deny pretrial release for an abuse of discretion. *People v. Jones*, 2023 IL App (4th) 230837, ¶¶ 26-30. An abuse of discretion occurs only when the circuit court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it. *People v. Colon*, 2018 IL App (1st) 160120, ¶ 12. When we review the circuit court's evaluation of evidence for an abuse of discretion, we will not substitute our own judgment for the trier of fact on issues regarding the weight of the evidence or the credibility of the witnesses. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11.

¶ 16    At the pretrial detention hearing in this case, the State represented that it has an eyewitness to the murder who is prepared to testify against defendant upon retrial. The State presented evidence that the co-defendant in the case confessed to committing the murder along with defendant, and the co-defendant was later convicted by a jury of first-degree murder. The co-defendant gave a statement that squares with the eyewitness statements given around the time of the crime on key, detailed facts tending to show defendant's guilt. The State also highlighted the eyewitness testimony it presented at trial, which it claims is strong and supports denying pretrial release to defendant.

¶ 17 In addition, the State highlighted that one of the trial witnesses, the one who was working as an FBI informant, testified at trial and previously gave statements that defendant approached him a week after the murder, and defendant held two guns to the witness's head. Defendant told the witness that if the witness ever told anybody about the murder, defendant would kill him. The exact quote from the witness's testimony was that defendant said, "[i]f you ever tell anybody, I'm going to kill you. That's on my mama. I'll kill you." The witness also testified that defendant's girlfriend approached the witness at a later point and asked the witness to sign an affidavit indicating that defendant did not commit the murder. The State pointed out that defendant was previously convicted of aggravated discharge of a firearm and sentenced to the Illinois Department of Corrections before subsequently being convicted and sentenced in this case.

¶ 18 The circuit court found that defendant was a real and present threat to another person and the community as well as the criminal justice process because of the evidence of the crime committed and because defendant threatened a witness. The court indicated that it reviewed the criteria to consider when making a determination of dangerousness as set forth in the Code of Criminal Procedure. See 725 ILCS 5/110-6.1(g). The circuit court found "specific articulable facts" in the record indicating defendant was a real and present threat to persons or the community.

> "There are witnesses who have testified previously in this matter and, from what I can gather from the evidence, will testify that the Defendant was the person who shot and killed the deceased person in this matter. There are statements made by the Defendant. There was a threat to [an eyewitness] concerning shooting or killing him if he spoke of this incident."

The court then concluded that "no condition or combination of conditions of pretrial release can mitigate the real and present threat posed by the Defendant…" and "no less restrictive conditions would avoid the real and present threat posed by the Defendant."

¶ 19　The General Assembly has provided Illinois courts with a non-exhaustive list of factors to consider when making a determination as to whether a defendant poses a real and present threat for purposes of denying the defendant pretrial release under sections 110-2 and 110-6.1 of the Illinois Code of Criminal Procedure.

> "The court may, in determining whether the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, consider, but shall not be limited to, evidence or testimony concerning:
>
> (1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.
>
> (2) The history and characteristics of the defendant including:
>
> (A) Any evidence of the defendant's prior criminal history indicative of violent, abusive or assaultive behavior, or lack of such behavior. Such evidence may include testimony or documents received in juvenile proceedings, criminal, quasi-criminal, civil commitment, domestic relations, or other proceedings.
>
> (B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.
>
> (3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release or other release from custody pending trial, sentencing, appeal or completion of sentence for an offense under federal or state law.

(9) Any other factors, including those listed in Section 110-5 of this Article deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." 725 ILCS 5/110-6.1(g).

The circuit court weighed the evidence presented by the parties in light of those criteria and determined that defendant was subject to being denied any pretrial release.

¶ 20    Defendant argues on appeal, as he did in the circuit court, that he is entitled to pretrial release under the new statutory scheme. Defendant argues that the circuit court abused its discretion when it denied his motion for pretrial release because the case against him is weak, as the circuit court itself indicated when it granted him relief on his postconviction petition. Defendant explains that he was subject to a $1 million bond before his first trial but now is subject to being held without bail. Defendant further explains that, prior to him being granted a new trial, the State's Attorney's Office offered him a plea deal under which he would be released

from prison for time served. He concludes that, obviously, the State does not consider him a risk if it was willing to release him. Defendant points out that he has served 23 years of his 30-year sentence and has not had disciplinary problems in prison and has instead been a "model prisoner." Defendant also states that his co-defendant does not stand by the confession and claims that it was coerced, and that the co-defendant continues to maintain his own innocence. Defendant further explains that the witness who was an FBI informant cannot be believed because the witness's statements have morphed over the years.

¶ 21     The State presented evidence that defendant held a gun to the head of a witness in this case and ordered the witness not to implicate defendant or defendant would kill him. The State also presented evidence that defendant attempted to use a third party, his girlfriend, to fabricate evidence or to persuade the witness into giving a statement favorable to defendant that would have been different than the statement the witness had previously provided to the State implicating defendant. Defendant admits that he held a gun to the witness, but he maintains that he did so for a different purpose. There was testimony at trial that defendant also approached the other eyewitness a week after the shooting and told her not to cooperate with the police. A review of the evidence in light of a consideration of the factors set forth in section 110-6.1(g) reveals that defendant meets many of the criteria that would militate in favor of pretrial detention.

¶ 22     Further, the co-defendant here confessed to the murder and did so in a manner consistent with the eyewitness's statements on key facts. In the co-defendant's statement, the co-defendant implicates defendant in the murder and illustrates defendant's more sizable role in the offense and defendant's supposed stronger culpability for bringing about the murder. The evidence against defendant was corroborated by multiple different witnesses and from varying viewpoints.

Based on defendant's threat to an eyewitness, his previous attempts to manipulate the evidence against him, defendant's criminal history and, with a new trial pending, we cannot say no reasonable person would agree with the trial court's conclusion that defendant poses a threat to the safety of a person or the community or a threat to obstruct or attempt to obstruct the criminal justice process. See 725 ILCS 5/110-6.1(g); see also, *e.g.*, *People v. Feazelle*, 2023 IL App (2d) 230397-U, ¶ 14 (unpublished order under Supreme Court Rule 23) (affirming the order of pretrial detention where, among other things, the defendant confronted the witnesses at a time after they witnessed him committing the offense, suggesting that the defendant "was not easily deterred from his violent behavior and might attempt to obstruct the criminal justice process."). Therefore, we find no abuse of discretion.

¶ 23   The trial court here expressly and appropriately considered the correct relevant factors and the evidence presented to it before reaching its decision. The court carefully and thoughtfully weighed the evidence presented under the prevailing law and made a reasoned decision based on the evidence. Under the totality of the circumstances, the circuit court did not abuse its discretion by finding that the State presented clear and convincing evidence to justify denying pretrial release to defendant.

¶ 24                                    CONCLUSION

¶ 25   Accordingly, we affirm.

¶ 26   Affirmed.

¶ 27   JUSTICE ELLIS, specially concurring:

¶ 28   I fully concur with the majority's well-reasoned decision.  I would not employ the abuse-of-discretion standard, but I would uphold the trial court's judgment under any standard of review.

11